**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

James A. Stephens,               )
                                 )
         Plaintiff,              )  Case No. 1:11-CV-513
                                 )
    vs.                          )
                                 )
Aetna Life Insurance Company,    )
                                 )
         Defendant.              )

O R D E R

        This matter is before the Court on cross-motions for

judgment on the administrative record filed by Plaintiff James A.

Stephens (Doc. No. 19) and Defendant Aetna Life Insurance Company

(Doc. No. 20).  For the reasons that follow, Plaintiff's motion

for judgment on the administrative record is well-taken and is

**GRANTED**; Defendant's motion for judgment on the administrative

record is not well-taken and is **DENIED.**  This case

is **REMANDED** to the plan administrator with instructions to

conduct a proper review of the medical evidence in the record.

I. <u>Background</u>

        Plaintiff James A. Stephens presents a claim against

Defendant Aetna Life Insurance Company ("Aetna") pursuant to the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §

1132(a)(1)(B), to review the plan administrator's decision

denying his claim for long-term disability benefits pursuant to a

health and welfare plan sponsored by his employer, Paxar

Corporation.  Plaintiff contends that the plan administrator's

determination that he is not disabled under the "any occupation" provision of the Plan was arbitrary and capricious because it was not the product of a deliberate principled reasoning process and because it was not supported by substantial evidence.

## I. Background

In May 2004, Plaintiff injured his back at work when he slipped while lifting an 80 pound mold. Plaintiff's fall resulted in a back/lumbar strain and a herniated disc at L4-L5. AR935. Plaintiff returned to work briefly on light duty but ceased working altogether in June 2004 due to back pain. AR582.

As stated, Plaintiff was a participant in his employer's employee health and welfare plan ("the Plan"). Defendant Aetna Life Insurance Company is both the benefits underwriter of the Plan and the Plan's claims administrator. Complaint ¶ 4. The Plan pays disability benefits under two circumstances. First, the Plan pays disability benefits for a period of 24 months if the participant is unable to perform the material duties of his own occupation because of disease or injury (the "Own Occupation Clause"). Doc. No. 20-2, at 3. Second, the Plan pays disability benefits after the initial Own Occupation period expires only if the participant is unable to perform any "reasonable occupation" due to disease or injury (the "Any Occupation Clause"). Id. The Plan defines "reasonable occupation" as "any gainful activity for which you are; or may

reasonably become; fitted by: education; training; or experience; and which results in; or can be expected to result in; an income of more than 60% of your adjusted predisability earnings." Doc. No. 20-2, at 17. Aetna paid Plaintiff two years of benefits under the Own Occupation Clause but determined later that Plaintiff is not disabled under the Any Occupation Clause. Plaintiff now seeks review and reversal of the Plan Administrator's determination that he is not disabled under the Any Occupation Clause.

A. <u>Summary of the Medical Evidence Relevant to the First Termination of Benefits</u>

In general, the medical records indicate that Plaintiff has had an extended and unsuccessful course of treatment to relieve back pain he experiences as a result of his slip and fall at work.

In July 2004, a computerized tomography study of Plaintiff's lumbar region showed a disc herniation at L4-5. AR930. In October 2004, an MRI of Plaintiff's spine showed mild disc bulging at L4-5 and L3-4 without nerve root impingement. AR 919. An MRI of Plaintiff's spine taken in 2005 showed degenerative disc disease in the lumbar region that was compatible with his age and which was described as "quite mild" and small radial tears at L2-3 and L4-5. AR872, AR886. Dr. Poelstra ruled out surgery as a treatment option. AR858, AR859. A nerve conduction study of Plaintiff's lumbar area conducted in

March 2006 showed no evidence of radiculopathy or nerve root impingement.  AR964.  Plaintiff also had epidural injections which did not provide any relief.

Plaintiff's primary pain management specialists were Dr. Lalia Gomaa, an anaesthesiologist, and Dr. R. Grant Goodwin, a chiropractor.  The office treatment notes from these providers are voluminous.  Typically, however, the treatment notes reflect continued reports by Plaintiff of significant low back pain.  On physical examination, Plaintiff would have significantly reduced range of motion in the lumbar spine.  Restrictions indicated by Dr. Goodwin were no lifting over 20 pounds, occasional lifting of 10 pounds, frequent lifting of 5 pounds, frequent change of positions, with no prolonged sitting and limited standing and walking, no bending at the waist, twisting, pushing and pulling, and no climbing stairs.  AR963, AR964.

In July 2009, Dr. Gomaa provided an opinion which stated that Plaintiff is unable to sustain gainful employment as a result of his disc herniation.  AR1117, AR1118.  As a basis for this opinion, Dr. Gomaa noted the nature of the injury, findings on examination, including marked restriction in range of motion and lumbar paraspinal spasm, diagnostic tests confirming disc lesions, two consultations ruling out surgery as a treatment option, and the failure of rehabilitation and epidural injections to provide long-term benefit.  Dr. Gomaa indicated that Plaintiff

needs to change positions frequently and avoid long term sitting. Dr. Gomaa also stated that Plaintiff can only lift and carry 10 pounds, and then only for a short period and distance. Additionally, Plaintiff can perform no bending or twisting and cannot climb stairs and ladders. Dr. Gomaa stated that, in her opinion, these restrictions rule out sedentary employment. Additionally, due to his reliance on narcotic pain control medication, Dr. Gomaa stated that Plaintiff should avoid operating or being around moving machinery. Finally, Dr. Gomaa stated that even if an employer accepted all of these restrictions, Plaintiff would likely experience frequent and extended absences due to exacerbations of his condition. AR1118. In a July 2009 office note, Dr. Goodwin also opined that Plaintiff's lumbar injury is permanent and precluded any gainful employment. AR992.

Plaintiff began treatment for depression with Dr. Moon and his assistant, Audrey Berlin, a therapist, in 2007. These medical records are also voluminous. The records consistently reflect that Plaintiff was depressed and anxious about his continuous back pain and inability to work. AR752-AR847.

Plaintiff had previously been awarded worker's compensation benefits for his injury. In November 2009, Dr. Stephen Duritsch reviewed Plaintiff's medical records for the Industrial Commission of Ohio and provided an opinion that his

back injury had reached maximum medical improvement and that he is capable of performing work at the light level of exertion. AR1106-AR1111. In January 2009, Dr. Mark Reynolds, a psychiatrist, completed a psychiatric examination of Plaintiff in reference to his worker's compensation claim and stated that his psychological condition had reached maximum medical improvement. AR1099-AR1105.

In December 2009, Aetna referred Plaintiff's case to Dr. Richard Kaplan for a review of his medical records and an opinion as to his ability to work from a physical standpoint. Dr. Kaplan provided a report in which he concluded that Plaintiff is not disabled by his back injury. AR1312-AR1316. Dr. Kaplan essentially concluded that Plaintiff's subjective complaints of disabling pain were not supported by objective medical data. AR1315. Dr. Kaplan felt that Plaintiff's inactivity had led to deconditioning which Plaintiff then perceived as disability. <u>Id.</u> Dr. Kaplan recommended some short-term lifting, carrying, and postural limitations in order to facilitate Plaintiff's return to work until his physical ability improved at which time his functional capacity could be re-evaluated. <u>Id.</u> Dr. Kaplan concluded, therefore, that Plaintiff was not disabled under the Any Occupation Clause from June 2004 through the date of his report. AR1316.

Aetna also obtained a transferable skills analysis and labor market survey which identified five positions available at the light level of exertion within the relevant pay range that Plaintiff could perform. AR1338-AR1380.

In January 2010, Dr. Jennifer Stoeckel completed a psychological vocational assessment of Plaintiff. Part of the assessment included completion of the WAIS-IV test and the Wide Range Achievement Test-IV. Plaintiff tested at the borderline range for intellectual functioning. Plaintiff also demonstrated below average academic abilities, in particular for spelling and math. Plaintiff's language skills were at the sixth and seventh grade levels. Dr. Stoeckel opined that Plaintiff would have difficulty competing in sedentary or lighter occupations due to his borderline intellectual and academic skills. She ultimately concluded that Plaintiff is unemployable due to the combination of physical impairments and vocational/intellectual limitations. AR1328-AR1334.

Dr. Kaplan wrote a second evaluation in March 2010 after Aetna provided him with the medical evaluations from the Industrial Commission of Ohio which indicated that Plaintiff can perform light work. AR1391-AR1393. Dr. Kaplan stated that the new information did not change his original recommendation, and indeed, only supported it. AR1392.

B. <u>The Plan Administrator's First Decision</u>

In April 2010, the Plan Administrator issued a succinct decision denying Plaintiff's claim for benefits under the Any Occupation Clause. The letter briefly summarized the relevant plan definition, noted the five positions that the labor market analysis determined that Plaintiff can perform, and stated that there was no objective medical evidence which indicated that he would be unable to perform gainful work. AR1387-AR1389. The letter did not discuss or summarize any of the medical or psychological evidence in the record.

C. <u>Plaintiff's First Appeal and Further Independent Reviews</u>

Plaintiff appealed the initial denial of his claim for "Any Occupation" benefits and Aetna obtained a new independent physical evaluation review, and, for the first time, an independent psychological review.

Dr. Elana Mendelssohn, a psychologist, reviewed Plaintiff's records and provided a report to Aetna dated July 16, 2010. AR658-AR666. Dr. Mendelssohn also spoke to Audrey Berlin, Dr. Moon's assistant, about Plaintiff's treatment for depression. Dr. Mendelssohn noted that Plaintiff's mental health treatment providers consistently documented that Plaintiff had a depressed mood and a flat, constricted and anxious affect. She also commented that Plaintiff's treatment providers noted the presence

8

of depression. Dr. Mendelssohn, however, apparently discounted these findings because they did not "include specific mental status findings or description of direct and observed behaviors to corroborate the presence of impairment in emotional or behavioral functioning." AR664. Dr. Mendelssohn also noted that Dr. Stoeckel's test results showed that Plaintiff has impaired to low academic functioning. AR664-AR664. Dr. Mendelssohn, however, gave little or no weight to these test results on the grounds that Dr. Stoeckel failed to indicate whether the tests included measures to insure the validity of the results. AR665. Overall, Dr. Mendelssohn concluded that the medical evidence did not support a finding that Plaintiff is functionally impaired from working from a psychological standpoint. Id.

Dr. Russell Green reviewed Plaintiff's medical records and provided a report to Aetna dated July 26, 2010. AR643-AR656. Dr. Green also spoke with Drs. Gomaa and Goodwin about their treatment of Plaintiff's back pain. According to Dr. Green's report, Dr. Gomaa stated that Plaintiff has significant restrictions that would preclude his return to work. On the other hand, Dr. Green reported that Dr. Goodwin opined that Plaintiff could work in a position with no frequent lifting of more than 10 pounds, only occasional lifting of over 20 pounds, and the ability to change positions frequently. AR653. Dr. Green felt that the course of treatment of Plaintiff's back pain

was appropriate, but was he was critical because Plaintiff had never undergone a functional capacity evaluation to determine what he is capable of doing.  AR654.  Dr. Green opined that Plaintiff "is not restricted from working in total, in that, based on the records, he is able to functionally perform at some level."  AR654.  Dr. Green agreed with the work restrictions suggested by Dr. Goodwin but he rejected Dr. Gomaa's opinion that Plaintiff cannot work on the grounds that she "does not have enough information to offer advice as to restrictions and limitations[.]"  AR655.  Dr. Green concluded that Plaintiff can perform work at the light level of exertion.  Id.

On August 2, 2010, Aetna sent Plaintiff a letter summarizing Dr. Mendelssohn's and Dr. Green's reports. AR644-AR649.  The letter also advised Plaintiff that it was reversing the initial decision denying his claim because the March 2010 Labor Market Analysis did not take into account restrictions in Plaintiff's ability to sit and walk.  AR649.  Therefore, Plaintiff was advised that Aetna was going to return his file for further review.  Id.

Aetna then obtained another Labor Market Analysis which found five positions Plaintiff could supposedly perform at the light level exertion.  Thus, relying on the reports of Dr. Mendelssohn and Dr. Green, and the new Labor Market Analysis,

Aetna determined that Plaintiff is not disabled under the Any Occupation Clause.  AR1419-AR1423.

D. <u>Plaintiff's Second Appeal,</u><br><u>Additional Medical Evidence and File Reviews</u>

Plaintiff appealed from the September 2010 denial of his claim and submitted additional evidence for Aetna to consider.  The most significant pieces of evidence were an opinion letter from Plaintiff's treating podiatrist, Dr. Shital Pema, and a functional capacity evaluation performed by NovaCare Rehabilitation.

Dr. Pema indicated that Plaintiff has calcaneal stress syndrome bilateral foot, proximal plantar fascitis bilateral foot, and altered gait bilateral foot.  AR 1429-AR1430.  These conditions, Dr. Pema wrote, cause an "inability to ambulate effectively on a sustained basis with underlying musculoskeletal impairment, therefore the prognosis is poor."  AR1430.  With regard to work-related functional limitations, Dr. Pema stated, "There is chronic mechanical difficulty wearing shoes, standing, and walking, limiting Mr. James Stephens to a sedentary life style."  <u>Id.</u>

NovaCare performed a functional capacity evaluation of Plaintiff in December 2010.  AR1432-AR1438.  The evaluator, John Kellerstrass, summarized the overall results of the test as follows:

Overall Level of Work: Unable to perform Sedentary. Cannot perform full range of Sedentary work as defined by the U.S. Dept. of Labor in the DOT. This is due to difficulties performing the dynamic strength demands of work. These difficulties were due to poor mobility, poor position tolerance, pain response and poor strength.

AR1432.

Aetna then submitted Plaintiff's new evidence to Dr. Aparna Dixit for a psychological review and to Dr. John Marion for a medical review.

Dr. Dixit's psychological review was similar to Dr. Mendelssohn's review in that he discounted the importance of the treatment notes of Plaintiff's treating mental health providers because they did not include an objective assessment of his symptoms. AR576. Similarly, Dr. Dixit rejected Dr. Stoeckel's opinion and her test findings because they did not include tests to assess for malingering, symptom exaggeration, or test effort. AR576. Dr. Dixit concluded that Plaintiff was not disabled from working from a psychological standpoint through the date of his report. AR577.

Dr. Marion reviewed Plaintiff's medical records, including the new information from Dr. Pema and the NovaCare functional capacity evaluation. Dr. Marion also spoke to Dr. Goodwin and Mr. Kellerstrass about Plaintiff. According to his report, Dr. Goodwin declined to offer any specific occupational restrictions since neither he nor Dr. Gomaa had treated Plaintiff

for about a year. AR1733. However, Dr. Goodwin stated that it would be difficult for Plaintiff to maintain employment due to chronic pain. Id. Further according to the report, Mr. Kellerstrass told Dr. Marion that Plaintiff is limited to a sedentary occupation. Id.

Dr. Marion concluded that the records did not support a finding that Plaintiff is completely impaired from working and could work in a sedentary position with the ability to change positions as necessary. AR1733-AR1734. In leading to this conclusion, Dr. Marion wrote:

> The claimant has well documented bilateral foot and ankle issues. His treating podiatrist recommended a sedentary occupation (10 pounds lifting/carrying, sitting unrestricted and standing/walking limited to an occasional basis). This author would agree. His treating physician Dr. Gomaa, and chiropractor, Dr. Goodwin, wrote the claimant is unable to work secondary to his chronic back pain complaints. This author would not agree with this assessment. The claimant has complaints of chronic back pain diagnosed as a lumbar strain/sprain. This was related to a reported work related injury that occurred in June 2004. Any strain/sprain injury should have resolved several years ago. The case was discussed with Dr. Goodwin (who was speaking for his partner Dr. Gomaa on 3/21/11). He indicated that since he and Dr. Gomaa have not seen him in over a year, they were unable to determine if claimant is able to work at this time.
>
> In addition, lumbar spine radiological studies fail to document significant pathology and an electrodiagnostic evaluation was documented as normal. There were no specific objective neurological deficits on physical examination nor other objective findings supporting the assertion of this claimant's occupational capacity.

AR1734 (emphasis added).

On April 7, 2011, the Plan Administrator issued a decision denying Plaintiff's claim for long-term disability benefits under the Any Occupation Clause.  AR582-AR586.  In denying Plaintiff's claim, the Plan Administrator relied heavily on Dr. Marion's report.  In particular, the Plan Administrator cited that Mr. Kellerstrass reported to Dr. Marion that Plaintiff is capable of performing sedentary work.  AR586.  The decision also apparently quoted Dr. Marion's report when it noted that Dr. Pema recommended that Plaintiff can perform a sedentary position.  Id.  The decision also cited Dr. Marion's opinion that Plaintiff had a back strain or sprain that should have resolved long ago.  Id.  The Plan Administrator concluded, therefore, that Plaintiff is capable of performing sedentary work.  Like Dr. Marion, however, the Plan Administrator omitted any reference to or discussion of Plaintiff's disc herniation in his decision.  The Plan Administrator also relied on Dr. Dixit's report to conclude that Plaintiff is not psychologically disabled from working.  AR585.  The Plan Administrator, therefore, concluded that Plaintiff is not disabled under the Any Occupation Clause because he can perform the job of dispatcher, a position identified in the August 2010 labor market analysis.  AR586.

After this decision issued, Plaintiff's counsel forwarded to Aetna a letter written by Mr. Kellerstrass in which he denied informing Dr. Marion that Plaintiff is capable of

performing sedentary work.  AR563-AR566.  Counsel requested Aetna

to reconsider its decision denying Plaintiff's claim based in

part on Mr. Kellerstrass's letter.  Id. at 564.  Aetna, however,

refused to consider Mr. Kellerstrass's letter because its April

7, 2011 decision was its final decision.  AR588-89.

Plaintiff then filed a timely complaint for judicial

review of the Plan Administrator's decision pursuant to 29 U.S.C.

§ 1132(a)(1)(B).[1]  The parties have filed cross-motions for

summary judgment on the administrative record which are now ready

for disposition.

## II. Standard of Review

Plaintiff filed suit pursuant to ERISA, 29 U.S.C. §

1132(a)(1)(B), to review the Plan Administrator's decision

denying his claim for long-term disability benefits.  Plaintiff

disputes whether the arbitrary and capricious standard of review

applies in this case because Aetna admittedly did not include the

relevant plan documents and provisions when it filed the

administrative record.  Aetna in fact did not file the relevant

plan documents until it filed its motion for judgment on the

---

[1]     The complaint originally included a claim under 29
U.S.C. § 1132(c) based on Aetna's failure to provide Plaintiff
with a copy of Dr. Marion's report.  In relevant part, § 1132(c)
imposes a $100 per day penalty, payable to the plan participant
or beneficiary if the plan administrator "fails or refuses to
comply with a request for any information which such
administrator is required by this subchapter to furnish to a
participant or beneficiary[.]"  The parties, however, later
entered a stipulated dismissal of this claim.  Doc. Nos. 13, 15.

administrative record.  Plaintiff contends that because Aetna

failed to file in a timely fashion the plan documents the Court

should review the Plan Administrator's decision <u>de novo</u>.

Nevertheless, the documents Aetna ultimately filed with the Court

do indicate that the Plan Administrator has complete discretion

to make determinations concerning eligibility for plan benefits.

Doc. No. 20-3, at 37.  Where the plan vests the plan

administrator with complete discretion to make benefits

determinations, the arbitrary and capricious standard of review

applies.  <u>Yeager v. Reliance Std. Life Ins. Co.</u>, 88 F.3d 376, 380

(6th Cir. 1996).  Because the Court concludes that the Plan

Administrator's determination should be reversed even under the

more deferential arbitrary and capricious standard of review, the

Court will assume that standard applies in this case despite

Aetna's tardiness in filing the plan documents.

The Sixth Circuit has described at length the

parameters of the arbitrary and capricious standard of review:

> This standard is the least demanding form of judicial
> review of administrative action.  When it is possible
> to offer a reasoned explanation, based on the evidence,
> for a particular outcome, that outcome is not arbitrary
> and capricious.  Consequently, a decision will be
> upheld if it is the result of a deliberate principled
> reasoning process, and if it is supported by
> substantial evidence.  The ultimate issue in an ERISA
> denial of benefits case is not whether discrete acts by
> the plan administrator are arbitrary and capricious but
> whether its ultimate decision denying benefits was
> arbitrary and capricious.

While the arbitrary and capricious standard is
deferential, it is not, however, without some teeth.
Merely because our review must be deferential does not
mean our review must also be inconsequential. While a
benefits plan may vest discretion in the plan
administrator, the federal courts do not sit in review
of the administrator's decisions only for the purpose
of rubber stamping those decisions.  The obligation
under ERISA to review the administrative record in
order to determine whether the plan administrator acted
arbitrarily and capriciously inherently includes some
review of the quality and quantity of the medical
evidence and the opinions on both sides of the issues.

We have recognized that a conflict of interest exists
when the insurer both decides whether the employee is
eligible for benefits and pays those benefits. In this
case, because defendant maintains such a dual role, the
potential for self-interested decision-making is
evident.  However, this conflict of interest does not
displace the arbitrary and capricious standard of
review; rather, it is a factor that we consider when
determining whether the administrator's decision to
deny benefits was arbitrary and capricious.  The
reviewing court looks to see if there is evidence that
the conflict in any way influenced the plan
administrator's decision.

Finally, absent a procedural challenge to the plan
administrator's decision, this Court's review
is limited to the administrative record of the benefit
determination.

Evans v. UnumProvident Corp., 434 F.3d 866, 875 (6th Cir. 2006)

(internal citations, quotation marks, and brackets omitted).

### III. Analysis

In his motion for judgment on the administrative

record, Plaintiff advances three grounds for reversing the Plan

Administrator's decision: 1) Aetna mischaracterized the evidence

in its final decision; 2) Aetna's transferable skills analysis

failed to identify a reasonable alternate occupation he can

perform; and 3) Dr. Kaplan's report showed bias and a conflict of
interest on the part of Aetna, principally because Dr. Kaplan
frequently provides reports and opinions in favor of insurers and
against disability claimants.  In its motion for judgment on the
administrative record, and in support of affirming the plan
administrator's decision, Aetna relies significantly on the fact
that it obtained five independent medical reviews, each of which
concluded that Plaintiff is able to perform work, and two labor
market analyses which identified jobs that he can perform.  The
Court agrees with Plaintiff that the Plan Administrator's
decision was arbitrary and capricious due to his reliance on Dr.
Marion's report, which mischaracterized the medical evidence and
opinions Plaintiff submitted in support of his claims.

    As set forth above by the Court in the emphasized
selections from his report, Dr. Marion made several material
misstatements, mischaracterizations and/or omissions regarding
the medical evidence in concluding that Plaintiff is capable of
performing sedentary work.

    First, Dr. Marion stated that Dr. Pema, Plaintiff's
podiatrist, recommended that Plaintiff can perform sedentary
work.  Sedentary work is a term of art in the realm of disability
and functional capacity and generally requires the ability to
lift 10 pounds occasionally, with frequent sitting and occasional

walking.  <u>See</u> Dictionary of Occupational Titles, App. C, § IV
(available at http://www.occupationalinfo.org/appendxc_1
.html#STRENGTH) (visited June 12, 2012).  What Dr. Pema actually
stated in his evaluation, however, is that Plaintiff is limited
to a <u>sedentary lifestyle</u>.  A person limited to a sedentary
lifestyle is more commonly understood to mean someone who can
engage in little or no physical activity.  Thus, being limited to
a sedentary lifestyle is not the equivalent of being able to
perform sedentary work.  <u>See</u>, <u>e.g.</u>, <u>Stennett v. Commissioner of
Social Sec.</u>, 476 F. Supp.2d 665, 672 (E.D.Mich. 2007) ("There is
. . . a profound difference between an individual with a
sedentary lifestyle and one having a sedentary RFC, and the ALJ
erred in conflating the two concepts."); <u>Bosco v. Chater</u>, No.
95-CV-4320 (JG), 1996 WL 1088926, at *4 (E.D.N.Y. 1996)(the fact
that claimant's physician prescribed sedentary lifestyle for
claimant did not mean claimant could perform sedentary work).  It
was therefore clearly unreasonable for Dr. Marion to interpret
Dr. Pema's notation that Plaintiff is <u>limited</u> to a sedentary
lifestyle as a <u>recommendation</u> that he can perform sedentary work.
To the extent that Dr. Pema's statement was ambiguous, which is
what Aetna suggests in its reply brief, it would have been simple
enough for Dr. Marion to contact Dr. Pema for clarification,
which is something he apparently did not attempt to do.

Second, Dr. Marion also misstated the results and recommendations of Mr. Kellerstrass's functional capacity evaluation of Plaintiff.  As stated, Mr. Kellerstrass determined that Plaintiff cannot perform sedentary work, with the addendum that Plaintiff cannot perform the full range of sedentary work. As he did with Dr. Pema's opinion, Dr. Marion unreasonably and disingenuously interpreted Mr. Kellerstrass's opinion that Plaintiff cannot perform sedentary work, or the full range of sedentary work, as a conclusion that he can perform sedentary work.  The Plan Administrator made the same error in his final decision.  In light of Dr. Marion's misstatement of Mr. Kellerstrass's findings, it was unreasonable and arbitrary for the Plan Administrator not to consider Mr. Kellerstrass's letter clarifying the results of the functional capacity evaluation. Moreover, the refusal of the Plan Administrator to reconsider its decision in light of Mr. Kellerstrass's contention that Dr. Marion misrepresented his conclusions calls into question the fairness of Aetna's evaluation of Plaintiff's claim.

Third, Dr. Marion seems to have completely overlooked or ignored the evidence showing that Plaintiff has a lumbar disc herniation and dealt with his case as if it were a mere back sprain or strain.  Consequently, the validity of his opinion that Plaintiff can perform sedentary work is substantially if not

completely undermined because it is apparently based on an incomplete review of all of the available medical evidence.

In summary, Dr. Marion's report is at best sloppy and, at worst, unreasonably misconstrues evidence that supports Plaintiff's claim for benefits as evidence against his claim for benefits. The Plan Administrator was armed with the same medical records and evidence that Dr. Marion had and should have realized the fundamental errors and mischaracterizations of that evidence contained in his report. The unreliability of Dr. Marion's report, therefore, should have been evident to the Plan Administrator. The fact, however, that the Plan Administrator's final decision relied heavily on Dr. Marion's report, despite its many and obvious flaws, suggests an effort to "cherry pick" the record for a basis upon which to deny Plaintiff's claim. See Metropolitan Life Ins. Co. v. Conger, 474 F.3d 258, 265 (6th Cir. 2007) (plan administrator's decision is arbitrary and capricious if it is based on a selective review of the administrative record to justify a decision to terminate coverage); Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston, 419 F.3d 501, 510-11 (6th Cir. 2005) (plan administrator's decision denying plaintiff's claim for disability benefits was arbitrary and capricious where it relied on flawed and inadequate report of independent file reviewer). Therefore, the Plan Administrator's decision denying

Plaintiff's claim for disability benefits was arbitrary and capricious on that basis alone.

The Court is also troubled by the treatment of the psychological evidence by Aetna's reviewers. Both Dr. Mendelssohn and Dr. Dixit discounted the probative value of the treatment notes of Plaintiff's mental health providers ostensibly because they did not contain objective findings after a mental status examination without considering or giving any weight to the fact that Dr. Moon and Ms. Berlin treated Plaintiff for an extended period of time. Moreover, the independent reviewers apparently did not recognize that the office treatment notes contained boxes to indicate whether Plaintiff was anxious, sad, depressed, etc., at the time of his visit. These boxes would seem to provide some, if not all, of the information the reviewers claimed was missing from the treatment notes. Also somewhat disconcerting is the reviewing psychologists' treatment of the test results from Dr. Stoeckel showing that Plaintiff has borderline academic and intellectual functioning which impairs his ability to work. Drs. Mendelssohn and Dixit rejected these test results because Dr. Stoeckel did not indicate whether the tests included validity measures, but it seems evident to the Court that Dr. Stoeckel would not have provided the opinion she did if she believed the test results were invalid. Moreover, if the independent reviewers had legitimate questions about the

validity of the test results, they could have easily contacted Dr. Stoeckel to express their concerns and clarify the parameters of the test. They apparently did not do this, however. Therefore, the thoroughness and reliability of their review of the psychological evidence is open to question.

Additionally, while Aetna reviewed whether Plaintiff is disabled from working from a psychological standpoint and whether he is disabled from a physical standpoint, Aetna did not consider whether the combined effect of Plaintiff's psychological and physical impairments disable him from working. Dr. Gomaa specifically pointed out in her opinion letter that a patient's combined psychological and physical impairments can magnify the degree of his overall impairment. AR1118. Similarly, Dr. Lavanche indicated in his report that Plaintiff's depressive mood disorder and pain disorder exacerbate each other. AR1515-AR1517. Given these two opinions, it was arbitrary and capricious for Aetna to fail to consider whether the combined effect of Plaintiff's psychological and physical impairments disable him from working. E.g., DeGennaro v. Liberty Life Assur. Co. of Boston, 561 F. Supp.2d 811, 817 (W.D.Mich. 2008).

Finally, in addition to the inadequacies just noted, there are other factors which support finding that the Plan Administrator's decision was arbitrary and capricious. Most notably are Aetna's conflict of interest as Plan Administrator

and insurance underwriter, and Aetna's reliance on file reviews to deny Plaintiff's claim despite having the right under the policy to obtain independent medical examinations of Plaintiff. Doc. No. 20-2, at 13.  <u>See</u> <u>Calvert v. Firstar Fin., Inc.</u>, 409 F.3d 286, 295 (6th Cir. 2005)("[W]hile we find that Liberty's reliance on a file review does not, standing alone, require the conclusion that Liberty acted improperly, we find that the failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.").

Accordingly, for all of the reasons stated above, the Court concludes that the Plan Administrator's adverse disability determination was arbitrary and capricious and must be reversed.

Having found that the Plan Administrator's decision was arbitrary and capricious, the only remaining issue is Plaintiff's remedy.  A district court may remand the case with instructions to award the plaintiff benefits retroactively if the record clearly demonstrates that he is entitled to them.  <u>Cooper v. Life Ins. Co. of North Am.</u>, 486 F.3d 157, 171 (6th Cir. 2007). Otherwise, the appropriate remedy is to remand the case to the plan administrator with instructions to conduct a proper review of the medical evidence.  <u>Id.</u>  In making this decision, however, the Court cautioned that:

> Plan administrators should not be given two bites at
> the proverbial apple where the claimant is clearly
> entitled to disability benefits. They need to properly
> and fairly evaluate the claim the first time around;
> otherwise they take the risk of not getting a second
> chance, except in cases where the adequacy of
> claimant's proof is reasonably debatable.

Id. at 172.

In this case, despite Aetna's reliance on flawed independent file reviews to deny Plaintiff's claim, the Court cannot conclude that the record clearly demonstrates that he is entitled to disability benefits under the Any Occupation Clause. While Plaintiff criticizes Dr. Kaplan's report as being the product of bias and a conflict of interest, in fact the exertional limitations recommended by Dr. Kaplan are consistent with the exertional limitations suggested by Plaintiff's treating chiropractor, Dr. Goodwin, in numerous of his treatment notes. Additionally, there is additional support for a finding that Plaintiff is not psychologically disabled from working, most notably the independent examination and report Dr. Reynolds provided to the Industrial Commission of Ohio. Accordingly, the Court concludes that it cannot order an award of benefits to Plaintiff on this record and that the appropriate remedy is to reverse and remand the Plan Administrator's decision with instructions to conduct a proper review of the medical evidence.

## Conclusion

Accordingly, for all of the above reasons, Plaintiff's motion for judgment on the administrative record is well-taken and is **GRANTED**; Aetna's motion for judgment on the administrative record is not well-taken and is **DENIED.** The decision of the Plan Administrator is **REVERSED** and this case is **REMANDED** to the Plan Administrator for further proceedings consistent with this order.

**IT IS SO ORDERED**

Date  July 9, 2012                    s/Sandra S. Beckwith
                                    Sandra S. Beckwith
                          Senior United States District Judge